IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| GLENDA MORENO, | § |
| *Plaintiff*, | § § § |
| v. | § § |
| SANDERSON FARMS, INC. (PROCESSING DIVISION), | § § § § | CASE NO. 6:21-CV-00450-JCB-KNM
| *Defendant*. | § § |

### REPORT & RECOMMENDATION OF
### THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendant's Motion for Summary Judgment (Doc. No. 20) and Plaintiff's Response in Opposition (Doc. No. 21). Having considered the motion, the Parties' submissions, and the relevant law, the Court **RECOMMENDS** Defendant's Motion for Summary Judgment (Doc. No. 20) be **GRANTED**.

### BACKGROUND

Glenda Moreno ("Plaintiff" or "Moreno") began to work for Sanderson Farms, Inc. ("Defendant" or "Sanderson Farms") in Tyler, Texas during September 2020.[1] Plaintiff worked on the debone line, which required the use of knives to rapidly cut chicken on a moving production line.[2] After Sanderson Farms offered Plaintiff a job, Plaintiff completed the post-offer job placement medical form that Sanderson Farms requires of all employees.[3] At the end of the post-offer job placement medical form, employees sign an acknowledgment, attesting that:

---

[1] Pl.'s Compl., Doc. No. 1, ¶ 8; Pl.'s Resp., Doc. No. 21, ¶ 6; Moreno Dep., pp. 13:2-7, 31:7-13, 35:14-18.
[2] Doc. No. 21, ¶ 10; Moreno Dep., pp. 31:14-32:2.
[3] Def.'s Mot. for Summ. J., Doc. No. 20, p. 1.

1

> I hereby affirm that the statements and responses set forth above are true, complete and correct. I understand that any falsification, misrepresentation, or omission of information in this form shall be grounds for the company to withdraw an offer of employment or to discharge me if already employed.[4]

In response to the questions on the form, Plaintiff "expressly denied (1) taking any prescription medications; (2) any hospitalizations; and (3) that she 'bleeds easily.'"[5]

On October 30, 2020, Plaintiff fell while walking up some stairs at work after her meal break.[6] On November 10, Moreno spoke with the company nurse about her injury from falling up the steps.[7] The company nurse offered Plaintiff Ibuprofen, but she refused, disclosing that she "had been hospitalized with a pulmonary embolism in September 2019, had been taking a prescription blood thinner ever since, and therefore could not take ibuprofen for pain and inflammation from her fall."[8] On November 20, 2020, Moreno was terminated from her job at Sanderson Farms for the stated reason that she did not disclose her prescription blood-thinning medication on her post-offer job placement medical form.[9]

Plaintiff asserts five claims under the Americans with Disabilities Act ("ADA"): (1) Disparate treatment regarding Defendant's termination of Plaintiff based on qualification standards and other criteria that screened her out as an individual with disabilities; (2) Disparate impact based upon a fitness-for-duty policy which requires a full-duty release which had an impact on Plaintiff as an individual with disabilities by screening her from employment because she was required to take blood-thinning medication; (3) unlawful medical inquiry by Defendant's use of the post-offer medical forms; (4) failure to make reasonable accommodation to Plaintiff's

---

[4] Def.'s Answer, Doc. No. 5, p. 5.
[5] *Id*.; Doc. No. 21, ¶ 6.
[6] Doc. No. 1, ¶ 9; Moreno Dep., pp. 41:4-42:5, 43:2-3.
[7] *Id*. at ¶ 12.
[8] Doc. No. 20, p. 6; *See* Moreno Dep., pp. 54:22-55:6.
[9] Doc. No. 20, p. 2; Doc. No. 1, ¶ 14.

disabilities of needing to take her blood-thinning medication; and (5) Defendant regarded Plaintiff as disabled.[10,11]

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence show that "there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "material fact" is one that might affect the outcome of the suit under governing law. *Id.* Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Id.* When ruling on a motion for summary judgment, the Court must make all inferences from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party may meet its burden by pointing to the absence of evidence supporting any claim. *Celotex Corp.*, 477 U.S. at 325.

If the movant meets its burden, the nonmovant must go beyond the pleadings and set forth specific facts in the record sufficient to support his claim. *Anderson*, 477 U.S. at 257. The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the factors, or a mere scintilla of evidence. *Matsushita*, 475

---

[10] Although Plaintiff alleges a claim that Defendant "regarded Plaintiff as disabled" (Doc. No. 1, ¶ 18), such a charge is not a cause of action in and of itself but is rather a component of Plaintiff's disparate treatment claim. *See Cannon v. Jacobs Field Services North America, Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). As such, Plaintiff's alleged fifth claim shall be considered in the Court's analysis of Plaintiff's disparate treatment claim.

[11] Doc. No. 1, ¶ 18; Doc. No. 21, ¶ 24.

U.S. at 585; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The nonmovant is also required to articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith v. United States*, 392 F.3d 621, 625 (5th Cir. 2004).

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutl. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The evidence of the nonmovant is to be believed and all inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little*, 37 F.3d at 1075. The Court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace*, 80 F.3d at 1048 (citing *Little*, 37 F.3d at 1075).

## ANALYSIS

Defendant asserts that it is entitled to summary judgment with respect to each of Plaintiff's four claims.[12] Defendant makes the following arguments: (1) Plaintiff's unlawful medical inquiry

---

[12] Although Plaintiff's complaint alleges a fifth claim that Defendant "regarded Plaintiff as disabled" (Doc. No. 1, ¶ 18), such is an element of Plaintiff's disparate treatment claim and not alone a claim. *See Cannon*, 813 F.3d at 590.

claim fails as a matter of law[13]; (2) Plaintiff's disparate impact claim is not supported by evidence[14]; (3) Plaintiff's failure to accommodate claim is not supported by evidence[15]; and (4) the undisputed material facts entitle Defendant to summary judgment on Plaintiff's discriminatory disparate treatment claim[16].

**A.     Plaintiff's unlawful medical inquiry claim**

Unlawful medical inquiries are governed by 42 U.S.C. § 12112(d)(3) and 29 C.F.R. § 1630.14(b) of the Americans with Disabilities Act ("ADA"). An entity may require a medical examination or make a medical inquiry "after making an offer of employment to a job applicant and before the applicant begins his or her employment duties…if all entering employees in the same job category are subjected to such examination regardless of disability." 42 U.S.C. § 12112(d)(3). Under 29 C.F.R. § 1630.14(b)(3), such pre-employment medical examinations do not have to be job-related and consistent with business necessity. However, § 1630.14(b)(3) goes on to state that "if certain criteria are used to screen out an employee…as a result of such an examination or inquiry, the exclusionary criteria must be job-related and consistent with business necessity[.]"

Plaintiff alleges that Defendant's medical inquiry was unlawful in violation of 42 U.S.C. § 12112(d)(4)(A). Under 42 U.S.C. 12112(d)(4)(A),

> [a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

---

[13] (Doc. No. 20, p. 9)
[14] (*Id*. at 10)
[15] (*Id*. at 11)
[16] (*Id*. at 12)

Plaintiff claims that Defendant used Plaintiff's medical form as an offensive tool to screen out Plaintiff based on her actual or perceived disability.[17]

Plaintiff and Defendant disagree regarding the event that triggered protection under the ADA regarding Plaintiff's claim for unlawful inquiry. Plaintiff appears to assert that the ADA was triggered by Defendant's inquiry into Plaintiff's condition after Defendant's discovery of the medical information.[18] To the extent that Plaintiff references Defendant's later questioning of Plaintiff's condition, such was not initiated by Defendant.[19] Defendant's questioning occurred in response to information disclosed by Plaintiff as she was seeking care for an on-the-job injury.[20]

It is undisputed that Plaintiff filled out a post-offer job placement medical form at Defendant's behest prior to beginning work.[21] Defendant states that all employees in the processing department are required to complete the post-offer pre-employment medical form in the presence of a company nurse regarding past and present health conditions, hospitalizations, and medications, and answer any follow-up questions the nurse may have regarding information disclosed on the form.[22] As such, Plaintiff was required to complete the medical form along with all other post-offer employees of the processing department of Sanderson Farms.

Although there is disagreement as to whether Plaintiff's failure to disclose her prior hospitalization as well as her current prescription on the medical form was purposeful or accidental, it is undisputed that Plaintiff did not in fact make such disclosures.[23] Therefore, when it became clear to Defendant that Plaintiff's post-offer form was incomplete, Defendant was

---

[17] Doc. No. 21, ¶ 1.
[18] Doc. No. 21, ¶ 18.
[19] *Id*. at ¶ 9.
[20] *Id*.
[21] *Id*. at ¶ 6; Doc. No. 20, p. 4.
[22] Doc. No. 20, p. 4.
[23] Doc. No. 21, ¶ 6; Doc. No. 5, p. 5.

permitted to inquire further. Defendant's post-offer medical form given to all employees of the Processing Department complied with the requirements of a lawful post-employment-offer medical inquiry at the time the information was requested pursuant to 42 U.S.C. § 12112(d)(3) and 29 C.F.R. § 1630.14(b)(3). As such, Plaintiff's unlawful medical inquiry claim fails as a matter of law.

### B. Plaintiff's discriminatory disparate treatment claim

Disparate treatment claims allege deliberate discrimination in the terms or conditions of employment. *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 257 (N.D. Tex. 2011). "In a termination action under the ADA, the employee may either present direct evidence that [she] was discriminated against because of [her] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnel Douglas*." *U.S. E.E.O.C. v. Mid S. Extrusion, Inc.*, 341 F. Supp.3d 653, 658 (W.D. La. 2018); *See McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("*McDonnel Douglas*"). Direct evidence 'is evidence that if believed, proves the facts of discriminatory animus without inference or presumption.'" *Id.* (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 310 n. 6 (5th Cir. 2004)). Absent direct evidence of discrimination on the basis of an actual or perceived disability, a plaintiff must establish a *prima facie* case of discrimination by showing that:

> (a) she is disabled, has a record of having [] a disability, or is regarded as disabled, (b) she is qualified for her job, (c) she was subjected to an adverse employment action on account of her disability or the perception of her disability, and (d) she was replaced by or treated less favorably than non-disabled employees.

*Flanner v. Chase Inv. Servs. Corp.*, 600 Fed. Appx. 914, 922 (5th Cir. 2015) (quoting *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009)); *Crawford v. U.S. Dep't of Homeland Sec.*, 245 Fed. Appx. 369, 380 (5th Cir. 2007); *Cannon*, 813 F.3d at 590; *Clark*, 952 F.3d at 582. A plaintiff's "failure to establish an actual or perceived disability or impairment is

fatal to a plaintiff's case, and no further consideration is required. *Grant v. Harris Cty.*, 2018 U.S. Dist. LEXIS 45232, at *5 (S.D. Tex. 2018).

### 1. *Defendant assumes Plaintiff can make out a prima facie case of discrimination for summary judgment only.*

For the purposes of summary judgment only, Defendant assumes that Plaintiff can make out a prima facie case of disability discrimination.[24,25]

### 2. *Plaintiff alleges Defendant regarded her as disabled and terminated her based on its perception that she was disabled.*

Rather than alleging Plaintiff has a disability, Plaintiff instead asserts that Defendant "regarded Plaintiff as disabled."[26] The Fifth Circuit has stated that for an employee to be regarded as impaired under the ADA, the employee "need only show that her 'employer perceived her as having an impairment' and that it discriminated against her on that basis." *Mid S. Extrusion, Inc.*, 341 F. Supp. 3d at 660 (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015)); *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (Discrimination based on disability means that the disability "must play a role in the employer's decision-making process and have a determinative influence on the outcome.").

However, there are no grounds here that would indicate that Defendant regarded or perceived Plaintiff as disabled. Defendant's mere knowledge of Plaintiff's prior hospitalization for a pulmonary embolism and current prescription to prevent future blood clots[27] does not support an inference that Defendant regarded her as disabled. *See Flanner*, 600 Fed. Appx. at 922 (The

---

[24] Doc. No. 20, p. 12.
[25] As discussed *supra*, Plaintiff offered no evidence past mere conclusory statements that she was disabled under the ADA. Importantly, Plaintiff failed to allege any specific disability. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 345-46 (7th Cir. 2015) ("[s]urely a plaintiff alleging discrimination on the basis of an actual disability… must allege a specific disability." Otherwise, the defendant in such action does not have fair notice of Plaintiff's claim when the plaintiff fails to identify his disability.).
[26] Doc. No. 1, ¶ 18.
[27] (*See* Moreno Dep., p. 36:20-23)

employer's knowledge of employee's heart surgery alone does not support an inference that the employer regarded the employee as disabled.).

It is undisputed that Plaintiff was told that her employment was terminated because she was taking prescription medication not disclosed on the post-offer pre-employment medical form.[28] Plaintiff has failed to submit *any* substantive evidence that Defendant regarded Plaintiff as disabled and that Defendant's given reason for terminating Plaintiff was merely a pretext for discrimination. Moreover, Plaintiff goes on to highlight that Defendant does not believe taking a blood-thinning medication would affect Plaintiff's ability to work on the processing line, as stated by Defendant's corporate representative, Jennifer Buster. Doc. No. 21, ¶ 10 (citing Buster Dep., 42:1-6) (Defendant's corporate representative's statement that "taking a blood thinner would not affect the ability of Moreno to use a knife in her work").

Plaintiff's claim for discriminatory disparate treatment cannot survive summary judgment. There is no evidence that Plaintiff was disabled, had a record of being disabled, or was regarded as disabled by Defendant, and thus, Plaintiff cannot make out a *prima facie* case for discriminatory disparate treatment.

### 3. *Plaintiff has presented no evidence that she was treated less favorably than any other employees Defendant allegedly did not regard as disabled.*

In addition, Plaintiff has failed to show that she was treated differently and less favorably than other employees whom Defendant allegedly did not regard as disabled. Plaintiff offered no evidence as to this factor. By contrast, Defendant states that its decision to terminate Plaintiff for falsification of the medical form is consistent with its past decisions to terminate other employees, "which undoubtedly includes employees both with and without disabilities."[29] Further, in support

---

[28] Moreno Dep., p. 65:9-15: Doc. No. 20, p. 2.
[29] Doc. No. 20, p. 8.

of Plaintiff's contention that Defendant 'regarded Plaintiff as disabled,' Plaintiff notes that Defendant had never requested any medical information from Plaintiff or her physician prior to her termination, even though Defendant had required Plaintiff to sign a medical disclosure authorization following Plaintiff's on-the-job injury.[30] The fact that Defendant did not request medical documentation from Plaintiff or Plaintiff's physician pertaining to Plaintiff's medical history strongly supports Defendant's position that Plaintiff was terminated for her failure to disclose information on her medical form, independent of the substance of the information that was not disclosed.

### 4. *Defendant articulated a legitimate, nondiscriminatory reason for Plaintiff's termination.*

If the Court were to assume, *arguendo*, that Plaintiff could establish a *prima facie* case of disparate treatment discrimination, the burden would then shift to the Defendant to establish a legitimate, nondiscriminatory reason for Plaintiff's termination under the burden-shifting framework articulated in *McDonnel Douglas*.[31] In this case, it is clear that even if Plaintiff has made out a *prima facie* case of discrimination, Defendant has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff—for falsifying Plaintiff's post-offer medical form.[32] Defendant's stated reason in conversation with Plaintiff as to her termination was the same reason Defendant now states in court—that Plaintiff provided false and incomplete information on her post-offer medical form by failing to disclose her prior hospitalization for a pulmonary embolism and her current prescription blood-thinning medication.[33] Under the *McDonnel Douglas* burden-shifting scheme, Defendant's proffering of a legitimate, nondiscriminatory reason for

---

[30] Doc. No. 21, ¶ 10.
[31] *See McDonnel Douglas*, 411 U.S. at 802.
[32] Doc. No. 20, p. 2; Doc. No. 1, ¶ 14; Moreno Dep., p. 65:9-15.
[33] *Id*.

10

Plaintiff's termination (i.e. providing false and incomplete information on her medical form) would require Plaintiff to offer summary judgment evidence that by a preponderance of the evidence, Defendant's reason is merely a pretext for discrimination. *Mid S. Extrusion, Inc.*, 341 F. Supp. 3d at 663.

### 5. Plaintiff has failed to show that Defendant's stated reason was a pretext for discrimination.

Assuming Plaintiff could make out a prima facie case of discrimination, she has failed to satisfy her burden to show that by a preponderance of the evidence Defendant's stated reason was pretextual. *See Mid S. Extrusion, Inc.*, 341 F. Supp. 3d at 663. Although "close timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a prima facie case of retaliation" (*Swanson v. GSA*, 110 F.3d 1180, 1188 (5th Cir. 1997), *cert. denied*, 522 U.S. 948 (1997)), once an employer has articulated a legitimate, nondiscriminatory reason for the termination, the plaintiff must offer some evidence by which a fact-finder may infer that employer's real motive was to discriminate. *Robertson v. Alltel Info. Servs.*, 373 F.3d 647, 656 (5th Cir. 2004) ("Without more than timing allegations, and based on [employer's] legitimate, nondiscriminatory reason in this case, summary judgment in favor of [employer] was proper.").

In this case, both Plaintiff and Defendant dedicate significant time to the issue of whether Plaintiff's failure to provide accurate and complete information on the medical form was intentional.[34] According to Plaintiff, there is conflicting evidence as to whether Plaintiff intentionally failed to disclose her medical information.[35] Plaintiff asserts that she did not falsify the medical form but only forgot to mention the embolism and blood thinner medication.[36] Plaintiff

---

[34] Doc. No. 21, ¶¶ 12, 13, 26, 27; Doc. No. 21-10; Moreno Dep., pp. 61:2-62:2.
[35] Doc. No. 21, ¶ 26.
[36] *Id*. at ¶ 27; *See* Buster Dep, Ex. 9.

emphasized that, Lofton, Defendant's human resources employee, responsible for making the termination decision on behalf of Defendant stated that "[i]f it wasn't for [Plaintiff] admitting that she didn't disclose on purpose. I would have a hard time terming."[37] Plaintiff also points to the email from Defendant's company nurse to Defendant's human resources department as evidence of pretext where the nurse recounts his interaction with Plaintiff when she disclosed her prior medical history.[38] Defendant's nurse relays that Plaintiff had not disclosed her prior hospitalization, current prescription blood-thinner to prevent blood clots, and that she 'bleeds easily' in her post-offer medical form.[39] According to Plaintiff, "[a]t no place in the email does nurse Posada state or imply that Moreno intentionally failed to disclose the information regarding the embolism or her medication."[40]

Plaintiff asserts that Defendant "equated Moreno's blood thinner medication to her 'bleeding easily'"[41] Plaintiff argues that the opinion of Defendant's company nurse, Nurse Posada, is the only basis for the opinion that Plaintiff 'bleeds easily.'[42] Plaintiff further states that "Sanderson Farms assumed that the pulmonary embolism and blood thinner would have prevented Moreno from being able to work on the processing line because the job requires the use of knives"[43], and if she were to be cut, she would 'bleed easily.'[44] Plaintiff states that such assumption is "without basis in the record before the Court,"[45] and is an admission that Defendant regarded Plaintiff as being unfit for work in violation of the ADA[46].

---

[37] Doc. No. 21-10, Ex. H; Buster Dep., Ex. J.
[38] Doc. No. 21, ¶ 12; Buster Dep., Ex. 8.
[39] *Id*.
[40] *Id*. at ¶ 12.
[41] Doc. No. 21, ¶ 11 (citing Buster Dep., p. 43:10-21).
[42] Doc. No. 21, ¶ 24.
[43] (*Id*.)
[44] *Id*. at ¶ 16.
[45] (*Id*. at ¶ 17)
[46] (*Id*. at ¶ 24)

To the extent that it matters whether Plaintiff's failure to disclose her medical information was accidental or purposeful, Defendant offers some evidence to its position that Plaintiff purposefully withheld the information. Defendant points to Plaintiff's deposition, where, in response to being asked why Plaintiff did not disclose her current medication when she was first hired, Plaintiff stated "[b]ecause that is personal. Whatever medicine I'm taking, I don't have to tell anybody."[47]

However, Plaintiff's insistence that her failure to disclose was accidental rather than purposeful does nothing to change the underlying issue—that Plaintiff provided incomplete and inaccurate information on her medical form, and signed it, acknowledging that her responses were "true, complete, and correct," and that any misrepresentation or omission shall be grounds for termination.[48]

Moreover, Plaintiff allegedly provided false or inaccurate information as to *three* inquiries on her medical form where she affirmatively denied: (1) taking any prescription medications; (2) any hospitalizations; and (3) that she 'bleeds easily.'[49] Only the third inquiry is arguably subjective and debated between the parties; the first two are objective in nature. Therefore, the Court is somewhat perplexed by the inordinate focus pertaining to Plaintiff's intent as to the medical form and the issue of whether Plaintiff 'bleeds easily.'

Defendant argues that Plaintiff has offered no evidence that its refusal to let Plaintiff return to work following its discovery of Plaintiff's failure to disclose her medical information had anything to do with Plaintiff's ability to do the job. Doc. No. 20, p. 11. *See Kitchen v. BASF*, 952 F.3d 247 (5th Cir. 2020) (holding that summary judgment for employer on discharged employee's

---

[47] Moreno Dep., pp. 61:2-62:2.
[48] Doc. No. 20, p. 5.
[49] Doc. No. 20, p. 5; Doc. No. 21-7, Ex. 8.

13

ADA claim was proper as there was no direct evidence that the discharge was because of prejudice against alcoholics but rather, was based on a positive alcohol test and the agreement employee had signed that testing positive for intoxication at work could result in termination); *See Lucas v. T-Mobile USA, Inc.*, 217 F. Supp. 3d 951, 957 (S.D. Tex. 2016) (holding that employee's disability discrimination claim failed because employer believed that employee had violated the company's code of conduct by sending an altered email when it terminated him, and the employee's insistence that he did not purposefully modify the email did not generate a fact issue of pretext); *See also Reilly v. Lehigh Valley Hosp.*, 519 Fed. Appx. 759, 763 (3rd Cir. 2013) (Plaintiff did not meet his burden of showing employer's reason for terminating him was pretextual where "the only evidence of pretext [plaintiff] points to on appeal" is that he answered questions on an employment form "truthfully" according to his own interpretations, but where the employer could easily regard plaintiff's responses as dishonest.).[50]

---

[50] Plaintiff and Defendant disagree as to the utility and applicability of *Reilly* to the instant case. *See Reilly*, 519 Fed. Appx. at 759. Plaintiff argues that the *Reilly* Court's arguments are not binding on this Court and are merely dicta. Doc. No. 21, ¶ 30. Plaintiff also distinguishes *Reilly* from the instant case because "Reilly did not present an improper medical disclosure claim in his complaint" nor did he "oppose the [summary judgment motion] on this ground in the District Court." Doc. No 21, ¶ 29 (citing *Reilly*, 519 Fed. Appx. at 762). Defendant concedes that *Reilly* is not binding on this Court but highlights the similar case posture and factual circumstances between *Reilly* and the instant case. Although not binding on this Court, *Reilly* is persuasive. In *Reilly*, the plaintiff completed and signed a post-offer employment form where he expressly denied ever being recognized or diagnosed with alcoholism or drug addiction or treated for such. *Reilly*, 519 Fed. Appx. at 760. The District Court concluded that even if Reilly had established a *prima facie* case of disability discrimination, the employer had articulated a legitimate, nondiscriminatory reason for his termination in that he was dishonest on his employment form. *Id.* at 763. On appeal, Reilly contended that he had shown pretext because "he answered truthfully with regards to whether he ever received treatment for alcoholism or drug abuse, as he believed [treatment] was mandatory for his previous DUI." *Id.* The Third Circuit stated that "Reilly's belief that he answered the pertinent inquiries truthfully is not the determinative factor," but whether the employer could regard Reilly's responses as dishonest. *Id.* The *Reilly* Court determined that the employer could easily determine that Reilly's responses were dishonest due to undisputed evidence establishing that Reilly had received forty hours of addiction treatment, actively attended AA and NA, and admitted during his deposition testimony that he was a recovering drug addict and alcoholic. *Id.* Therefore, Reilly's bare assertion that he completed the form truthfully because he believed the purpose of the treatment program to have been to resolve his DUI charge, not to treat his addictions, is insufficient to permit a factfinder to conclude that the employer's real reason for terminating Reilly was based on disability discrimination. *Id.*

Finally, Plaintiff relies on the summary judgment standard that disability discrimination need not be the sole reason for her termination[51], and maintains that there is a fact question as to whether Defendant's stated reason for termination is pretextual[52]. Although discrimination on the basis of an employee's disability need not be the exclusive reason for the employee's termination, discrimination "must play a role in the employer's decision-making process and have a determinative influence on the outcome." *Pinkerton*, 529 F.3d at 519. That is, Plaintiff must be able to offer direct or circumstantial evidence that discrimination was a motivating factor; Plaintiff has failed to show such. *See Stewart*, 2020 U.S. Dist. LEXIS 14397, at *23 ("[T]he plaintiff's subjective belief of discrimination is not sufficient to survive summary judgment."); *See also Lucas*, 217 F. Supp. 3d at 957 ("A factual dispute over the employee's innocence of the allegations against him is not enough to survive summary judgment; the plaintiff must put forward evidence sufficient to create a factual dispute as to whether or not the [employer] subjectively believed that the allegations were true."). As such, Plaintiff has not offered evidence of Defendant's alleged pretext for discrimination.

### C.  Plaintiff's discriminatory disparate impact claim

Disparate impact discrimination claims address facially neutral employment practices that have disproportionately adverse effects on a protected group. *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). "To make out a prima facie claim of disparate-impact discrimination, a plaintiff must identify the challenged employment policy used by defendants, demonstrate a disparate impact on a protected group, and demonstrate a causal relationship between the identified

---

Therefore, the *Reilly* Court upheld the District Court's grant of summary judgment as to Reilly's discrimination claim under the ADA. *Id.*

[51] (Doc. No. 21, ¶ 15)
[52] (*Id.* at ¶ 25)

policy and the disparate impact." *Reyes v. Tex. Dep't of Crim. Justice*, 2017 U.S. Dist. LEXIS 179991, at *12 (W.D. Tex. 2017).

Plaintiff alleges disparate impact "based upon Defendant's fitness-for-duty policy which requires a full-duty release which had an adverse impact on Plaintiff as an individual with disabilities by screening Plaintiff from employment by reason of her impairment related to the requirement that she take a blood thinner."[53]

To the extent that Plaintiff alleges a fitness-for-duty policy at Sanderson Farms, Defendant vehemently denies such exists.[54] Further, Plaintiff has offered no evidence that Defendant requested a full-duty release from her following her injury.[55]

It is not at all clear from Plaintiff's pleadings or summary judgment evidence what employment policy or practice that Plaintiff is alleging as falling more harshly on one protected group than on other groups. Furthermore, Plaintiff has offered no evidence to demonstrate the existence of a causal relationship between such policy and the disparate impact. At most, Plaintiff restates her disparate treatment allegations pertaining to Defendant's discriminatory treatment of her, individually, in support for her disparate impact claim. Such evidence is insufficient to survive summary judgment as to a comparative impact on a protected group. *See Reyes*, 2017 U.S. Dist. LEXIS 179991, at *11-12 (Plaintiff only submitted evidence of discrimination against himself and six others; There was "no evidence, however, of the total requests for workplace accommodations submitted during this time, the number of requests made by members of the protected group, or statistics on the outcomes of these requests," which was "insufficient to raise a factual issue as to

---

[53] Doc. No. 1, ¶ 18.
[54] Doc. No. 20, p. 10 (citing Hall Decl., ¶ 8; Buster Decl., ¶ 6) ("[Sanderson Farms] does not have a policy requiring an employee to present a full-duty release to return to work following a workplace injury, and Plaintiff cannot point to any evidence to the contrary.").
[55] *See id*.

comparative impact on a protected group."); *See also Crawford v. U.S. Dep't of Homeland Sec.*, 245 Fed. Appx. 369, 381 (5th Cir. 2007) (Plaintiff's allegation that the government's use of background checks had a disparate impact on the employment of disabled persons without valid statistical evidence or analysis regarding said effect was insufficient to raise a genuine issue of material fact.). "Statistical evidence is ordinarily required in disparate impact cases." *Wallace v. Magnolia Family Servs., L.L.C.*, 637 Fed. Appx. 786, 789 (5th Cir. 2015); *See Munoz v. Orr*, 200 F.3d 291, 300 (5th Cir. 2000) ("Claims of disparate impact under Title VII must, of necessity, rely heavily on statistical proof."[56]).

Because Plaintiff does not allege a specific employment practice supported by evidence, does not demonstrate a disparate impact on a protected group, and fails to demonstrate a causal relationship between the policy and the disparate impact, Plaintiff's claim is not supported by the evidence. For these reasons, Plaintiff's disparate impact claim cannot survive summary judgment.

**D.     Plaintiff's failure to accommodate claim**

For an employee to prevail on a failure-to-accommodate claim, the employee must show: "(1) they are a qualified individual with a disability, (2) the disability and its consequential limitations were known by the employer, and (3) the employer failed to make reasonable accommodations for these limitations." *Singhal v. Baylor Coll. Of Med.*, 2021 U.S. Dist. LEXIS 67677, at *39 (S.D. Tex. 2021) (citing *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)). In order to establish that Plaintiff has a disability under the ADA, Plaintiff must show: "[she] has a physical or mental impairment with respect to a life activity; (2) the life activity is a

---

[56] Whether and what evidence constitutes direct or circumstantial evidence for discrimination under Title VII is analyzed similarly to that under the ADA. *See Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016) (citing discrimination cases under Title VII and the Age Discrimination in Employment Act of 1967 in its analysis of whether a former employee had offered direct evidence of disability discrimination under the ADA).

'major life activity;' and (3) the impairment 'substantially limits' the life activity." *Gonzalez v. Supreme Court of Tex.*, 2006 U.S. Dist. LEXIS 100348, at *11 (W.D. Tex. 2006) (citing *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003)). Plaintiff may also demonstrate a disability by showing she has a record of such an impairment or is regarded as having such an impairment.[57] Major life activities include tasks such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and walking." 29 C.F.R. § 1630.2(i). The ADA was amended by the Americans with Disabilities Act Amendments Act ("ADAAA") in 2008, noting that an impairment is a disability if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id*. A plaintiff has sufficiently shown she is regarded as having such an impairment if the plaintiff establishes she was subjected to an employment action because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A).

Plaintiff states that "there is a triable issue as to whether Sanderson Farms violated the ADA by refusing to consider allowing Moreno to work while taking the blood thinner prescription as a reasonable accommodation."[58] Plaintiff asserts that at the time Defendant discovered Plaintiff's prior hospitalization and current prescription medication, Defendant was apprised of Plaintiff's need for a reasonable accommodation,[59] and Defendant failed to accommodate

---

[57] *Id*. at *10.
[58] Doc. No. 21, ¶ 20.
[59] (*Id*. at ¶ 21)

Plaintiff's need that she take a blood-thinner.[60] Defendant argues that Plaintiff never requested nor was ever denied a workplace accommodation for a disability.[61]

For purposes of summary judgment only, Defendant assumes that Plaintiff can make out a prima facie case of disability discrimination, including that Plaintiff is a qualified person with a disability.[62,63]

Even if the Court assumes, *arguendo*, that Plaintiff *had* presented sufficient evidence of a disability, Plaintiff's requested accommodation, made only now, is that Defendant allow her to work while taking the preventative blood-thinning prescription medication.[64] Plaintiff's disclosure of her medication and medical history did not occur in an overt effort to request accommodations although having ample time to request that specific "accommodation." *See* Doc. No. 21, ¶ 8. Thus, Plaintiff's request is more akin to asking for an after-the-fact exception to the disclosure requirements of Defendant's medical form. *See Clark v. Champion Nat'l Sec.*, 952 F.3d 570, 587 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 662 (2020) (Despite never requesting an accommodation for loss of consciousness due to his diabetes for more than a year, plaintiff claimed he "never had an opportunity to seek an accommodation … because he was fired while he was in the emergency room." "[Plaintiff] is really requesting an after-the-fact, retroactive exception to the alertness

---

[60] (*Id.* at ¶ 1)
[61] Doc. No. 20, p. 11.
[62] Doc. No. 20, p. 12.
[63] Plaintiff has neither alleged a substantially limiting physical or mental impairment nor presented evidence as to a record of having any such impairment. If an individual is not disabled, there are simply no grounds for a failure to accommodate claim under the ADA as there is no disability for an employer to accommodate. *Stewart v. Smitty's Supply, Inc.*, 2020 U.S. Dist. LEXIS 14397, at *21 (E.D. La. 2020). *See Weed v. Sidewinder Drilling, Inc.*, 245 F. Supp.3d 826, 838 (S.D. Tex. 2017) ("The employer does not have to provide reasonable accommodations to employees only 'regarded as' having a disability."); *See also Crawford*, 245 Fed. Appx. at 381 ("[A]n employer is not required to accommodate an employee who it regards as disabled, but rather only those individuals who are *actually* limited and have requested an accommodation."). "Plaintiff's disability status is a threshold issue." *Tabatchnik v. Cont'l Airlines*, 2006 U.S. Dist. LEXIS 87855, at *10 (S.D. Tex. 2006).
[64] *See* Doc. No. 21, ¶ 1.

policy as an accommodation for his underlying disability—diabetes. But that is not an accommodation under the ADA.").

Plaintiff has failed to raise a genuine issue of material fact that Plaintiff had a disability and limitations known to Defendant and that Defendant failed to make reasonable accommodations for these limitations. There is no evidence that Plaintiff asked for or was denied reasonable accommodations. As such, Plaintiff's failure to accommodate claim cannot survive Defendant's Motion for Summary Judgment.

## RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** Defendants' Motion for Summary Judgment (Doc. No. 20) be **GRANTED**.

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b). A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from de novo review by the District Judge of those findings, conclusions, and recommendations, and except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Assn.,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 4th day of October, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE